86 | 159
108 | 650

---

R. HELBIG, Appellant, v. A. H. ROSENBERG *et al.*, Trustees, Appellees.

1. **Religious Societies:** QUALIFICATIONS OF PASTOR: DISMISSAL. The rules of the Evangelical Lutheran church require that the pastor of a congregation of that denomination be a member of a recognized synod of that church. A congregation is permitted, however, to call a pastor who is not a member of a synod, provided he expects to be admitted to membership, and his employment is approved by the general president of the synod; from such time, and until final action is taken by the synod, he is regarded as a provisory member, or one taken on trial. *Held*, under these rules, that a call of one to the

pastorate of a congregation of such denomination who was not at the time a member of any synod, but who had been admitted to provisory membership, as above indicated, did not preclude his dismissal by the congregation because of the want of such membership upon the final rejection of his application for membership by the synod; and notwithstanding the rules of such congregation did not specify the want of such membership among the grounds for the dismissal of a pastor.

2. ———: MEETINGS: NOTICE. It appearing that the date of the meeting of the church members at which the plaintiff was dismissed, was fixed upon his suggestion and advice, that he gave notice of the meeting from the pulpit, and participated in it, *held*, that any objection to the meeting on the part of the plaintiff because its date did not permit that it be "announced on two previous Sundays," as required by the rules, was waived.

3. ———: MEMBERSHIP: DISMISSAL: JURISDICTION OF COURTS. Courts of justice have no jurisdiction to investigate the causes leading to the dismissal of one from membership in an ecclesiastical body, and determine their weight and sufficiency.

4. **Evidence:** COMPETENCY: AFFIDAVIT FOR CONTINUANCE. A statement of what certain witnesses would testify to if present, as set forth in an affidavit filed in support of a motion for a continuance on account of the absence of such witnesses, and which it is stipulated between the parties would be their testimony if present, is not admissible in evidence where it appears that such testimony is in itself incompetent.

*Appeal from Mitchell District Court.*—HON. J. C. SHERWIN, Judge.

FRIDAY, OCTOBER 7, 1892.

ACTION to recover an amount alleged to be due to the plaintiff for services rendered as pastor. By direction of the court, the jury returned a verdict for the defendants, and the plaintiff appeals.—*Affirmed.*

*N. L. Rood*, for appellant.

*L. M. Ryce*, for appellees.

ROBINSON, C. J.—In December, 1886, the plaintiff was employed as pastor of the Evangelical Lutheran Church of St. John, in Rock township, Mitchell county, Iowa, of which the defendants are trustees. He entered

upon the discharge of his duties as pastor in January, 1887; and continued to serve the church named until October 15, 1889, when the congregation voted that his relation to the church should be terminated. Thereafter the defendants locked the doors of the church against him, and refused to pay him the salary provided for by the contract of employment. This action is brought to recover one hundred and twenty-five dollars and interest, for salary alleged to be due for the quarter ending January 15, 1890. The plaintiff claims that, according to the law of the Evangelical Lutheran Church, his employment was for life, and not for a year or a term of years; that the proceedings which ended in the vote of the congregation to terminate his employment were illegal, and without effect; and that he is still pastor of the church in Rock township, and as such is entitled to the stipulated compensation.

I.   The call or vocation which was accepted by the plaintiff did not designate any time during which he was expected to serve as pastor, although it specified the compensation he should receive "per year," and provided that it should be paid to him quarterly. The rules and regulations of the church, in force when the call was accepted and since, contain the following provisions:

1. RELIGIOUS societies: qualifications of pastor: dismissal.

"Art. 8. *Power of the congregation.* — The congregation, as a body, does possess the supreme power concerning the external and internal management of all the spiritual and material affairs of the congregation.   *   *   *

"Art. 10. *Of the ministry.*—Only such a one can be a minister of this parish who   *   *   *   acknowledges himself to the written confession of the Evangelical Lutheran Church, possesses the required capabilities to oversee the ministry, and is a member of a rec-

ognized Evangelical Lutheran synod of the country.
*   *   *

"Art. 14. *Discharge of the minister.*—The minister
can be discharged from the congregation in Christian
order. Justified reasons for the dismissal of the min-
ister are: *First.* Willful, shown faithlessness in the
performance of his office. *Second.* Constant holding
fast to false doctrine. *Third.* Unholy or scandalous
course of life. In return, the minister binds himself not
to leave the congregation arbitrarily, and to conduct his
office toward the same until the manifested will of God
does require a separation of the minister from his con-
gregation.   *   *   *

"Art. 18. *Meetings.*—Church members' meetings
are held of the congregation at the begining of every
quarter year, or when it is considered necessary. In
case of especially important circumstances, it is neces-
sary that the same be announced on two previous Sun-
days, with the naming of the points."

It is insisted by the appellant that the congregation
could not discharge him, excepting on one or more
of the grounds enumerated in article 14, and no charge
under that article was preferred against him. It is
contended by the appellees that the plaintiff was not
qualified to act as pastor of the church in question, for
the reason that he was not a member of a recognized
Evangelical Lutheran synod of the country, as required
by article 10; and, therefore, his continuance as pastor
was in violation of the laws of the church. The appel-
lant admits that he was not a recognized member of
any synod, but contends that, as he was not such a
member when employed by the church, the fact that
he was not a member in October, 1889, afforded no
ground for his dismissal. It appears, however, that
he had applied for admission to the synod of Iowa and
other states, and was admitted to provisory member-
ship by the general president of the synod in the year

1886; but that at a meeting of the synod held at Waverly, in the year 1889, it was decided to terminate all relations with him, and he ceased to have any connection with the synod from that time. By the laws which govern the church, it is allowable for a congregation to call a pastor who is not a member of any synod, but who expects to be admitted to membership. His employment by the congregation must, however, be approved by the general president of the synod, and from that time until final action taken by the synod he is regarded as a provisory member, or one taken on trial. It is not permissible for a congregation to employ or retain a pastor who is not, and cannot become, a member of the synod. Therefore, when the application of the plaintiff for membership was rejected, in June, 1889, he ceased to be a member of the synod, and at the same time ceased to have the qualifications essential to permit him to serve his congregation as pastor. It is true, the fact that the pastor ceases to be a member of the synod is not specified in article 14 as a ground for dismissal, but the articles must be construed together in connection with the other recognized laws of the church which were in force when plaintiff was employed as pastor. Article 10 provides that no one can be a minister of the parish who is not a member of a recognized Evangelical Lutheran synod of the country, and, when the plaintiff ceased to be a member of any synod, by the terms of article 10, and by the laws which govern the church, his pastoral relations with his congregation should have ceased. The congregation, however, retained him four months after that time, in violation of the law of the church, and had the congregation retained him permanently, it would by so doing have severed its official relations with the synod. It is clear that the omission in article 14 to specify the termination of the pastor's membership in the synod as a ground for dismissing him, would not prevent his dis-

missal on that ground.   Under article 10 he could not, under the law of the church, remain pastor after such termination.   These articles were not in terms made a part of the call of the plaintiff, but his contract of employment was necessarily made subject to the laws which govern the congregation, and which were designed to regulate and control the employment and dismissal of pastors.

II.   It is said the meeting of October 15, 1889, was illegal, for the reason that article 18 required that

2. ——: meetings: it be announced on two previous Sundays, notice. and that the points to be considered should have been named.   The meeting of October 15, 1889, was the second one held to consider the question of dismissing the plaintiff.   Seven days before that date there was a meeting of the congregation, which was attended by the plaintiff and a committee of three clergymen, representing the synod.   There is a conflict in the evidence as to what objection, if any, the plaintiff made to the second meeting, but he testifies that he objected to it because of insufficient notice.   It appears, however, without dispute, that he attended both meetings in his official capacity, as president of the congregation.   He states that he objected on the eighth, when the proposed meeting of the fifteenth was under discussion, that due notice of it could not be given; but if he did so he waived the objection, for it is shown that the congregation fixed the date of the meeting in consequence of his suggestion and advice, and for the reason that the notice could not be given on two Sundays, because of his proposed absence.   Notice of the meeting was given, with his approval on the eighth, and he announced it from his pulpit on the next Sunday.   The preponderance of the evidence shows that he entered no protest until after the vote of October 15, dismissing him, was announced, and that the meeting was held with his approval; but conceding that

his testimony, to the effect that he did protest against the meeting as illegal, raised a conflict as to that question, which the court could not determine, yet, as the uncontradicted evidence shows that he really advised that the meeting be held, that he gave notice of it, and participated in it, and no one but himself is now objecting to it, we think the court properly refused to consider his protest as entitled to any weight, and treated the second meeting as valid.

III.   After the defendants had submitted their evidence, the plaintiff asked leave to amend his petition, and show that there was hostility on the part of some members of the congregation towards him, on account of which they banded themselves together and preferred charges against him; that the charges were by the congregation voted to be absolutely false and unworthy of attention; that, not being satisfied with such action, the discontented members presented the charges to the synod at Waverly, and thereby influenced it to terminate its relation with the plaintiff.   The court refused to permit the amendment, and also refused to allow the plaintiff to show why the synod rejected his application for membership, that certain persons who favored the action taken by the synod and congregation were hostile to him, and similar facts. We think the rulings of the court in these respects were correct.   It was not competent for the court to investigate the causes which led to the action taken by the synod, and determine their weight and sufficiency. That action was final until set aside or modified by the proper ecclesiastical tribunal.

IV.   Appellant complains of the refusal of the court to admit the testimony of certain witnesses set out in an affidavit filed in support of a motion for a continuance.   It is stipulated that the testimony of the witnesses

3. ——: membership: dismissal: jurisdiction of courts.

4. EVIDENCE: competency: affidavit for continuance.

would have been as set out in the affidavit. We think it was properly excluded, for the reason that it was incompetent.

Other questions are discussed by counsel, but we do not find them to be of sufficient importance to require any discussion. The rulings criticised were either correct or without prejudicial effect. There was no conflict in the evidence as to the controlling questions in the case, and we conclude that the district court properly directed a verdict for defendants. AFFIRMED.